116 So.2d 369

Bradley G. BROWN, as Director of Revenue of Jefferson County,

v.

**DIXIE HIGHWAY EXPRESS, INC.**

6 Div. 318.

Supreme Court of Alabama.

Oct. 29, 1959.

Rehearing Denied Dec. 10, 1959.

John S. Foster and J. M. Breckenridge, Birmingham, for appellant.

J. K. Jackson and Erle Pettus, Jr., Birmingham, for appellee.

Jenkins Jackson, Livingston, for Bd. of Commissioners, Sumter County, and John F. Watkins, Prattville, for Alabama League of Municipalities, amici curiae.

SIMPSON, Justice.

This is an appeal from a judgment rendered in the Circuit Court of Jefferson County in favor of the defendant tax payer in an action brought by Brown, as Director of Revenue of Jefferson County, seeking to recover of the defendant, Dixie Highway Express, certain ad valorem taxes, penalties and interest claimed by the plaintiff to be due by the defendant on certain motor vehicles it owned, and allegedly used or operated, in its business in Jefferson County. The taxes claimed are for the years 1954–55 and 1955–56. The taxes are claimed under § 877, Tit. 51, Code of Alabama 1940, as amended by Act No. 376, General Acts of Alabama 1943, pp. 346 and 347, which applies to Jefferson County, and in substance provides:

"To prevent motor vehicles from escaping taxation and to provide for the more efficient assessment and collection of taxes due on same, no license shall be issued to operate a motor vehicle on the public highways of this state, nor shall any transfer he [sic, be] made by the commissioner of licenses as provided under this chapter, until the ad valorem tax on such vehicle shall have been paid in the county for the preceding year, as evidenced by a receipt of the commissioner of licenses where the owner of said vehicle resides, if the vehicle is owned by an individual and if the vehicle is owned by a firm, corporation or association then as evidenced by the receipt of the commissioner of licenses in the county in which said motor vehicle is used or operated provided that this section shall not apply to motor vehicles owned by dealers, the state, counties, and municipalities. Every person, firm or corporation who desires to operate a motor vehicle on the public highways of Alabama shall first return such motor vehicles for ad valorem taxation to the commissioner of licenses of the county in which he resides, for the preceding tax year, and the commissioner of licenses of such county shall deliver to such person who makes the return as herein required, a certificate of assessment on a form prescribed by the department of revenue, and such certificate shall be the warrant of the commissioner of licenses to collect the tax as shown thereon. Motor vehicles within the meaning of this chapter shall not be included in any assessment made by any person, firm or corporation, and such motor vehicles shall not be considered as escaped property by reason of failure to include same in any tax return, but shall be assessed as herein provided. The Commissioner of licenses upon issuing a license for the operation of motor vehicles as herein provided

shall make a duplicate of the tax receipt and keep same on file in his office. The license tag shall be evidence of the payment of the license and ad valorem tax due as provided under this chapter. Valuation for ad valorem assessment shall be sixty percent of the fair and reasonable value of same. Motor vehicles brought into this State after the first day of October, and before the commissioner of licenses had completed his assessment shall be subject to taxation the same as if it has been held or owned in the state on the first day of October. The commissioner of licenses is authorized to issue a motor vehicle license where he ascertains and makes a record of the fact that there is no ad valorem tax due on said motor vehicle for the preceding year. The commissioner of licenses, in addition to assessing and collecting the ad valorem taxes due the state and county on motor vehicles, shall collect the ad valorem taxes on motor vehicles due all cities and towns located in the county. The commissioner of licenses shall report and pay over the money collected for said cities and towns at the same time and in the same manner as state and county taxes are reported and paid over by him."

The issue made by the pleadings was the allegation in the plaintiff's complaint that:

" 'All of the said three hundred and forty seven (347) motor vehicles were used and operated in Birmingham, Alabama, *and were not used or operated in Sumpter* [sic] *County, Alabama,* within the meaning of the pertinent statutes made and provided requiring the corporate owner of a motor vehicle to pay the ad valorem tax thereon in the County where it is used and operated.' (Emphasis supplied)".

A brief summary of the material facts are: The defendant, Dixie Highway Express, is a freight motor carrier, operating in interstate commerce. Its head office is in Meridian, Mississippi. From this point daily directions are issued to its freight terminals in order to maintain strict and constant control of the movement of freight over the routes of the defendant, which traverse Mississippi, Alabama, Georgia, and Louisiana, with principal terminals in Meridian, Jackson, Hattiesburg, Gulfport, New Orleans, Tuscaloosa, Birmingham, Selma, Montgomery, Opelika, Atlanta, and Columbus, Georgia. Irregular service is provided to points other than those served by the regular routes. In Alabama, for instance, defendant is authorized to operate in thirty counties. All traffic moving eastward over defendant's routes from Louisiana-Mississippi passes through York and Livingston in Sumter County, while all traffic from Georgia-Alabama westward must pass through Sumter County. Sumter County is, therefore, the Alabama gateway connecting the eastward and westward operations of defendant's system. The use of Sumter County highways is necessary on any movement between Alabama and Mississippi over defendant's routes. No other county in Alabama or elsewhere is in the same bottleneck position as is Sumter County. This fact, therefore, is of paramount significance on the issue of the use and operation of the defendant's vehicles in Sumter County.

The operation in which defendant is engaged is the carriage of freight. This freight is hauled in combination "over the road" vehicles consisting of heavy duty tractors and large trailers. The trailer has no independent means of locomotion, and when attached to the tractor moves as a unit with the tractor. There are 95 tractors and about 256 trailers. The "over the road" tractors and trailers are the only vehicles involved in this case. Neither the tractors nor the trailers are assigned to any one point on the defendant's system. Constant movement of the "over the road" vehicles is the keystone to successful operation of the motor freight business such as that carried on by the defendant. In actual operation the tractors do not remain at any one point on defendant's line, except Meridian, Mississippi, longer

than is necessary to load and depart, which is usually eight to ten hours. Defendant's trailers do not remain at any terminal longer than the required time for unloading and reloading, which generally does not exceed forty-eight hours and in most instances, within twenty-four hours. Sometimes a loaded trailer is delivered at a terminal interchange point to connecting line of another carrier for carriage to some distant point. Defendant's tractors are used over the entire system without assignment to any terminal or station. Minor repairs of defendant's vehicles are made at terminals such as New Orleans or Birmingham, but any vehicle requiring major repairs is returned to the main shops at Meridian.

In addition to the "over the road" vehicles—the large tractors and trailers—defendant uses two other types of vehicles in its operation. One is the 2¾ ton service truck which is used to take care of breakdowns on highways. The other is a larger pickup truck with a box on the back from 12 to 15 feet long. Neither of these types of vehicles is involved in this case. There are, for example, about 25 such pickup trucks used in the Birmingham area on which the license tags were purchased in Jefferson County. As stated, the only vehicles of the defendant involved in this litigation are the "over the road" vehicles, which are employed in the carriage of freight over the defendant's entire system. Alabama requires the purchase of fuel in Alabama for vehicles using the roads of this state. Eighty-two out of ninety-five tractors use diesel fuel. Diesel fuel purchases in Sumter County and Jefferson County show that about ⅔ of such fuel was purchased in Sumter as compared with about ⅓ in Jefferson. This in itself attests the constant presence and use of the vehicles in Sumter County as compared with less use in Jefferson County.

Section 704 of Title 51 provides that if a motor vehicle is used or operated over the highways of a county in Alabama then it is due to purchase a license and pay the tax. Double taxation by any other county from that in which the tag was purchased is expressly prohibited by § 711, Title 51, Code 1940.

The trial court held that the license tags and taxes were lawfully purchased in Sumter County as shown by the following excerpt from his judgment:

"The Legislature, in 1923, first used the language appearing in Sections 704 and 877, Title 51, Code of Alabama, 1950 [sic, 1940]. (General Acts of Alabama of 1923, Page 284.) The law was later re-enacted as a part of the General Revenue Act approved July 10, 1935. The stated purpose is (a) 'To prevent motor vehicles within the meaning of this article from escaping taxation and to provide for the more efficient assessment and collection of taxes due on the same. * * *' Thereafter the statute requires that ' * * * if the vehicle is owned by a firm, corporation or association, then as evidenced by the receipt of the tax collector in the county in which said motor vehicle is used or operated.' It becomes necessary to construe this latter quoted part of the Act.

"A fair reading of the plain words of the Statute leaves no room for judicial construction. The controlling words appearing in the Statute are 'used or operated'. Giving this phrase its unequivocal meaning the defendant truck line 'used or operated' the vehicles, here sought to be taxed, in Sumter County to a substantial extent. Accordingly, it is the opinion of the Court that having paid the license tax in Sumter County for each of the vehicles described in the complaint and license tags having been duly issued for each of the vehicles described in the complaint by the proper officials of Sumter County, there is no authority for the same vehicles to be taxed by the officials of Jefferson County for the same period because to do so would be double taxation forbidden by law. Accord-

**50**

ingly, it is Ordered, Adjudged and Decreed by the Court that plaintiff is not entitled to recover in this action and judgment is hereby rendered for the defendant to go hence without day with costs taxed against the plaintiff, for which execution may issue. Plaintiff excepts."

There are no controlling precedents construing § 704 as applied to the status of the appellee as presented by the case at bar, but we are in accord with the conclusion reached by the trial court. The evidence abundantly shows quite an extensive use of these "over the road" vehicles in Sumter County as compared with less use and operation of the vehicles in Jefferson County. The appellee, therefore, has the privilege of selecting Sumter County as the place of assessing the property for taxation and the purchase of license tags.

It is argued in one of the amicus curiae briefs that to construe the statute to mean substantial use and operation was incorrect, but to the contrary the statute should be construed to mean that the place of taxation should be where the vehicles were principally used and operated. This argument impresses us as being the difference between "tweedle-dum and tweedle-dee", since the evidence goes to show that the "over the road" vehicles were used more extensively on the highways of Sumter County than in Jefferson County, so the conclusion could be reached that they were principally used in Sumter County as compared with the other counties of the state, including Jefferson County.

Appellant also argues that to allow this construction to be placed on the statute by the trial court would lead to confusion in the assessment and collection of taxes in such cases, but we are not impressed with this argument, either. There does not appear to have been any confusion so far with the operation of the statute, and we can not appraise any situation which would lead to confusion. Indeed, as was argued by appellee's counsel in oral argument before the court, the appellee was not required to assess its property in Alabama, since Mississippi, Georgia, Louisiana, and Alabama have reciprocal agreements whereby any state would recognize tags purchased in the other states. And to continue to persist in the attempt made by the appellant could result in the loss of all taxation on these vehicles in the State of Alabama. We, of course, do not rest our conclusion on any such theory, but mention it in passing.

We think the trial court was correct in the conclusion reached.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.